# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

| | | |
|---|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : | CASE NO. 2:20-CV-00023-WOB-CJS |
| Plaintiff, | : : | |
| v. | : : : | |
| THE NEW YORK TIMES COMPANY d/b/a THE NEW YORK TIMES, | : : : | |
| Defendant. | : : | |
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : | CASE NO. 20-CV-00024-WOB-CJS |
| Plaintiff, | : : | |
| v. | : : : | |
| CBS NEWS, INC., et al., | : : : | |
| Defendants. | : : | |
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : | CASE NO. 2:20-CV-00025-WOB-CJS |
| Plaintiff, | : : | |
| v. | : : : | |
| ABC NEWS, INC., et al., | : : : | |
| Defendants. | : : | |

NICHOLAS SANDMANN, by and             :        CASE NO. 2:20-CV-00026-WOB-CJS
through his parents and natural guardians,   :
TED SANDMANN and JULIE                :
SANDMANN,                             :
                                      :
          Plaintiff,                  :
                                      :
v.                                    :
                                      :
GANNETT CO., INC. AND GANNETT         :
SATELLITE INFORMATION                 :
NETWORK, LLC,                         :
                                      :
          Defendants.                 :
                                      :
NICHOLAS SANDMANN, by and             :        CASE NO. 2:20-CV-00027-WOB-CJS
through his parents and natural guardians,   :
TED SANDMANN and JULIE                :
SANDMANN,                             :
                                      :
          Plaintiff,                  :
                                      :
v.                                    :
                                      :
ROLLING STONE, LLC, et al.,           :
                                      :
          Defendants.                 :

## DEFENDANTS' JOINT MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO STRIKE REPORT
## AND TESTIMONY OF CRAIGE ROBERTS

Robert B. Craig (KBA 15590)
TAFT STETTINIUS & HOLLISTER LLP
50 East RiverCenter Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

Nathan Siegel (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K St. NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

*Counsel for Defendants*
*ABC News, Inc., ABC News Interactive, Inc.,*
*and The Walt Disney Company*

J. Stephen Smith (KBA 86612)
Darren W. Ford (KBA 95373)
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive
Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.law
dford@graydon.law

Jared A. Cox
DENTONS BINGHAM GREENEBAUM LLP
101 South Fifth Street, Suite 3500
Louisville, KY 40202
Phone: (502) 589-4200
Jared.cox@dentons.com

John C. Greiner (*pro hac vice*)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

*Counsel for Defendant The New York Times
Company d/b/a The New York Times*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
Natalie.spears@dentons.com
Gregory.naron@dentons.com

Jessica Laurin Meek (*pro hac vice*)
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
Jessica.meek@dentons.com

*Counsel for Defendants CBS News Inc.,
ViacomCBS Inc., and CBS Interactive Inc.*

Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel (*pro hac vice*)
Cynthia E. Neidl (*pro hac vice*)
Kelly L. McNamee (*pro hac vice*)
Candra M. Connelly (*pro hac vice*)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, NY 12207
Phone: (518) 689-1400
Fax: (518) 649-1499
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Counsel for Defendants Gannett Co., Inc. and
Gannett Satellite Information Network, LLC*

Theresa A. Canaday
Samuel W. Wardle
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
tcanaday@fbtlaw.com
swardle@fbtlaw.com

Michael E. Nitardy
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 283-5902
mnitardy@fbtlaw.com

Kevin T. Shook (*pro hac vice*)
FROST BROWN TODD LLC
10 West Broad Street
Columbus, OH 43215
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner (*pro hac vice*)
FROST BROWN TODD LLC
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

*Counsel for Defendants Rolling Stone, LLC
and Penske Media Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

DR. ROBERTS' PURPORTED EVIDENCE ..................................................................... 2

    A.  Introduction..................................................................................................... 2

    B.  Dr. Roberts' Background. ................................................................................ 3

    C.  Dr. Roberts' Proposed Expert Report. ............................................................ 3

        1.  Dr. Roberts' Two-Step Approach. ........................................................ 3

        2.  Dr. Roberts Ignored Plaintiff's Deposition Testimony........................... 4

        3.  Dr. Roberts' Opinion About the Meaning of "Blocking." ....................... 5

        4.  "Sure Could.  Sure Could." .................................................................. 6

        5.  Dr. Roberts' Testimony Is Ruled Inadmissible. ..................................... 7

        6.  Dr. Roberts' Opinion About the Truth of the Blocking Statements. ........ 7

        7.  Dr. Roberts Has No Expertise Or Experience In Video Analysis. ........... 9

        8.  Reviewing the Stipulated Videos Required No Expertise: "I'm As Competent
           As Anybody Else." ............................................................................. 10

STANDARD OF REVIEW .............................................................................................. 11

ARGUMENT .................................................................................................................. 13

POINT I      PLAINTIFF'S EXPERT LINGUIST'S TESTIMONY ABOUT THE
              DICTIONARY DEFINITION OF "BLOCKING" IS INADMISSIBLE AND
              SHOULD BE STRICKEN ................................................................... 13

POINT II     THE PROPOSED EXPERT TESTIMONY IS UNTESTED, UNTESTABLE,
              AND UNRELIABLE ........................................................................... 15

    A.  Courts Have Repeatedly Barred Linguistic Testimony In Defamation Cases As
        Unhelpful and Scientifically Invalid......................................................... 15

    B.  Dr. Roberts' Opinion, Based On Watching Videos, That the Blocking Statements
        Are False Is Inadmissible and Should Be Stricken Because It Is Not Based on
        Any Reliable or Accepted Methodology. ................................................... 18

POINT III    BY PRONOUNCING A LEGAL CONCLUSION, THE PROPOSED
              EVIDENCE VIOLATES RULE 704 ...................................................... 21

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amorgianos v. Amtrak,*
  303 F.3d 256 (2d Cir. 2002) ...................................................................................12

*Barger v. Playboy Enterprises,*
  564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd,* 732 F.2d 163 (9th Cir.), *cert.*
  *denied,* 469 U.S. 853 (1984) ...................................................................................17

*Bennett v. Cisco Systems, Inc.,*
  63 F. App'x 202 (6th Cir. 2003) ............................................................................19

*Brueggemeyer v. American Broadcasting Cos.,*
  684 F. Supp. 452 (N.D. Tex. 1988) .......................................................................15

*Coffey v. Dowley Manufacturing, Inc.,*
  89 F. App'x 927 (6th Cir. 2003) ............................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ...........................................................................................*passim*

*General Electric Co. v. Joiner,*
  522 U.S. 136 (1997) ...............................................................................................12

*Goebel v. Denver & Rio Grande Western Railroad, Co.,*
  346 F.3d 987 (10th Cir. 2003) ..............................................................................12

*Hatfill v. New York Times Co.,*
  488 F. Supp. 2d 522 (E.D. Va. 2007), *aff'd,* 532 F. 3d 312 (4th Cir. 2008) .....................19, 21

*Joy v. Bell Helicopter Textron, Inc.,*
  999 F.2d 549 (D.C. Cir. 1993) ..............................................................................12

*Kentucky Speedway, LLC v. NASCAR, Inc.,*
  No. 05-138, 2008 WL 113987 (E.D. Ky. Jan. 7, 2008) .........................................18

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) ...........................................................................................*passim*

*McCabe v. Rattiner,*
  814 F.2d 839 (1st Cir. 1987) .................................................................................15

*Mike's Train House v. Lionel, LLC,*
  472 F.3d 398 (6th Cir. 2006) ...................................................................................3

*Nelson v. Tennessee Gas Pipeline Co.*,
    243 F.3d 244 (6th Cir. 2001) ...................................................................................11, 12

*Pride v. BIC Corp.*,
    218 F.3d 566 (6th Cir. 2000) ...........................................................................................11

*Sandmann v. WP Co., LLC*,
    No. 2:19-19-cv-00019 (E.D. Ky.)...................................................................................2, 4

*Smelser v. Norfolk S. Ry.*,
    105 F.3d 299 (6th Cir. 1997) ...........................................................................................12

*Stoler v. Penn Central Transportation Co.*,
    583 F.2d 896 (6th Cir. 1978) ...........................................................................................13

*Tilton v. Capital Cities/ABC, Inc.*,
    938 F. Supp. 751 (N.D. Okla. 1995), *aff'd*, 95 F.3d 31 (10th Cir. 1996) .........................15, 16

*Torres v. County of Oakland*,
    758 F.2d 147 (6th Cir. 1985) ...........................................................................................21

*United States v. Nasr*,
    No. 18-7-KKC, 2021 U.S. Dist. LEXIS 22264 (E.D. Ky. Feb. 5, 2021) ...............................21

*United States. v. Stagliano*,
    729 F. Supp. 2d 222 (D.D.C. 2010)..................................................................................20

*World Boxing Council, Inc. v. Cosell*,
    715 F. Supp. 1259 (S.D.N.Y. 1989) ...........................................................................15, 17

*Yeiser v. DG Retail, LLC*,
    No. 18-cv-0320, 2021 U.S. Dist. LEXIS 73365 (D. Colo. Apr. 16, 2021) ............................19

**State Cases**

*Greene v. Phila. Media Network, Inc.*,
    40 Pa. D.& C. 5th 157, 2014 Phila. Ct. Com. Pl. LEXIS 236 (Pa. Com. Pl.
    Phila Cnty., Aug. 1, 2014) ..........................................................................................14, 16

*John W. Gilbert, M.D., et al. v. Comm of Ky., Cabinet for Health and Family Srvcs.*,
    No. 05-CI-00275 (Ky. Cir. Ct. Franklin Cnty.) .................................................................17

*Seropian v. Forman*,
    652 So. 2d 490 (Fla. Dist. Ct. App. 1995) .......................................................................15

*State v. Conway*,
    193 N.J. Super. 133, (N.J. Sup. Ct. App. Div. 1984), *cert. denied*, 97 N.J. 650,
    (1984)........................................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................................ 20

Fed. R. Evid. 104(a) ..................................................................................................... 11

Fed. R. Evid. 702 ...................................................................................................*passim*

Fed. R. Evid. 704 ................................................................................................... 13, 21

Lawrence Solan, *Can The Legal System Use Experts on Meaning*, 66 Tenn. L.
 Rev. 1167, 1193 (1999) ...................................................................................... 16, 21

U.S. Const., amend. 1 .................................................................................................. 18

iv

## INTRODUCTION

Defendants ABC News, CBS News, Gannett Co. and Gannett Satellite Information Network, The New York Times, and Rolling Stone (collectively, "Defendants") jointly move to strike the Report and deposition testimony of Plaintiff Nicholas Sandmann's proposed expert, Craige Roberts, from being considered (1) in support of Sandmann's motion for partial summary judgment[1] and (2) in opposition to Defendants' joint and supplemental motions for summary judgment. Defendants have no quarrel with Dr. Roberts' qualifications as a professional linguist or with the standard dictionary definitions of the Blocking Statements included in her Report. However, Defendants strenuously object to the various roles Sandmann would have her assume by parachuting into this case — video analyst, mind-reader, and translator of ordinary things — in a last-ditch effort to stave off summary judgment. Dr. Roberts' Report and testimony[2] offer an interpretation of the videos to which the parties have stipulated that is contradicted by all of the admissible evidence in the record — including, most conspicuously, Sandmann's own deposition testimony. Further, as set forth more fully below, Dr. Roberts' approach to rendering her opinions is plagued with obvious and significant problems which make them completely unreliable and inadmissible.

---

[1]  Plaintiff filed the same motion in each case against all Defendants (ABC News, Inc.; CBS News Inc.; Gannett Co., Inc. and Gannett Satellite Information Network, LLC; The New York Times Co.; and Rolling Stone, LLC and Penske Media Corporation) joining in this motion. *See* ABC, Doc 64; CBS, Doc. 58; Gannett, Doc. 65; N.Y. Times, Doc. 52; Rolling Stone, Doc. 59. The Memorandum in Support of Nicholas Plaintiff's Motion for Partial Summary Judgment filed on December 20, 2021, is cited herein by page as "(Motion _____)." The instant motion to strike is joined exclusively by *USA Today* because any publication of the Blocking Statements by the *Detroit Free Press, Nashville Tennessean, Cincinnati Enquirer,* and *Louisville Courier Journal* may not properly be adjudicated in this action because they are not directly owned, operated, or published by Gannett Co. or Gannet Satellite Information Network, LLC and, further, certain of these four community newspapers are not subject to personal jurisdiction in this Court.

[2]  Dr. Roberts' Report served on November 10, 2021, and her December 7, 2021, deposition transcript are referred to herein by page, respectively, as "(Rep. ___)" and "(Roberts Dep. ___)." The transcript of Dr. Roberts' deposition is attached hereto as **Exhibit A**, and her Report is attached hereto as **Exhibit B**.

Plaintiff's reliance on Dr. Roberts to provide opinion testimony regarding how a "reasonable native speaker of English" (Rep. 5) — in other words, an average person — would understand the Blocking Statements epitomizes the type of pseudo-technical testimony that has been routinely rejected by courts in defamation cases including where, as here, such testimony has been offered in summary judgment proceedings. This Court should exclude her testimony because it requires no specialized knowledge or particular expertise to watch the videos or understand what the Blocking Statements mean when given, as the law requires, their ordinary, common sense meaning. Indeed, as Dr. Roberts herself admitted under oath, any layperson could do so as competently as she. (Roberts Dep. 199:7-23)  The proffered expert Report should be rejected because (1) Dr. Roberts is not competent to provide the expert testimony that is its subject; (2) it addresses an issue about which the Court needs no expert assistance on summary judgment; (3) its validity is attenuated to the point of nonexistence; and (4) it usurps the role of the Court by instructing how an ultimate legal question should be decided in this case.

### DR. ROBERTS' PURPORTED EVIDENCE

**A. <u>Introduction</u>.**

By way of background, Plaintiff implored this Court to allow his lawsuits to proceed on his Amended Complaints so that he could conduct discovery — "we want to go to the principals; Nathan Phillips, the eyewitnesses . . . We want to get the facts and fully develop the facts including deposing Nathan Phillips." *Sandmann v. WP Co., LLC*, No. 2:19-19-cv-00019 ("*WaPo*") (E.D. Ky. Doc. 60; Page ID#56-57).  Despite having been granted that opportunity by the Court because "justice requires" (*WaPo*, Doc 64; Page ID#861), Plaintiff then chose not to depose Nathan Phillips — or any other fact witness, for that matter, including the purported "companions" with whom he alleged Phillips had "conspired."

2

Defendants did take Plaintiff's deposition on September 13-14, 2021.  And when Plaintiff was deposed, he made a host of admissions about his conduct and the stipulated video evidence that undermined the entire premise for his Amended Complaints, conceding that he intentionally "planted" himself in Phillips's path and that Phillips could have perceived that he "blocked" him. (Sandmann Dep. 174:24-25, 175:1-14, 199:3-16)  A week after Plaintiff's deposition, his counsel was on the phone seeking "expert" testimony from Dr. Roberts.  (Roberts Dep. 221:15-25, 222:1-5)  Dr. Roberts answered the call, and drew up a report that *purposefully* excludes Plaintiff's deposition testimony as a percipient fact witness.  *Mike's Train House v. Lionel, LLC*, 472 F.3d 398, 408 (6th Cir. 2006) ("We have been suspicious of methodologies created for the purpose of litigation").  Instead, as discussed below, Dr. Roberts' Report, issued on November 10, 2021, consists of her personal reflections on viewing the videos, garnished with academic jargon, which Plaintiff now proffers to avoid his sworn testimony.

**B.  Dr. Roberts' Background.**

Dr. Roberts is a linguist who specializes in semantics and pragmatics.  (Rep. 2)  Despite an extensive professional publication record, she has never published anything pertaining to video analysis of live events.  (Roberts Dep. 47:22-25, 48:1-7)  She has no specialized training or expertise in video analysis, and no track record as an expert testifying about events depicted on video.  (*Id.* 45:22-25, 46:1-2, 57:11-14, 134:13-21)

**C.  Dr. Roberts' Proposed Expert Report.**

**1.  Dr. Roberts' Two-Step Approach.**

Plaintiff offers essentially two distinct but related opinions from Dr. Roberts.  First, she opines as to the meaning of the word "blocking" as she maintains Phillips used it in the Blocking Statements.  Second, in what constitutes by far the majority of what she sets out in her Report, and

3

based solely on her personal review of the first 18 stipulated videos, she opines that the Blocking

Statements are false. As she explained at her deposition:

> Q: Okay. So as I understand it, there are two parts to your analysis. In the first part you look at the passages --
>
> A: Yeah.
>
> Q: -- to determine the meaning of the usage of the words, right? And then the second part --
>
> A: Not just the words, the whole sentences in which they pertain.
>
> Q: The whole sentences. And then in the second part of your analysis you review the videos to determine the meaning -- whether the meaning of the two passages seems to be true?
>
> A: That it's consistent with the facts that I observed in the videos, yes.
>
>                      \* \* \* \*
>
> Q: And so, essentially, you reviewed the videos and then determined whether, after having reviewed the videos, the statements were false based on what you observed in the videos, correct?
>
> A: That's correct.

(Roberts Dep. 198:16-25, 199:1-6, 120:3-7)

### 2. Dr. Roberts Ignored Plaintiff's Deposition Testimony.

Remarkably, even though Plaintiff's former counsel has successfully obtained discovery

on the grounds that the Court could *not* "look at these various videos to figure out what was Phillips

saying" (*WaPo*, Doc. 60; Page ID#50), looking only at various videos is exactly what Dr. Roberts

testified that she did. In fact, fundamental to Dr. Roberts' opinions is that they are expressly

premised on ignoring Sandmann's deposition testimony, as well as any possible evidence from

Phillips or any other eyewitness:

> Q: Okay, so you'd -- by design your ultimate opinions are purposefully based only on the videos and not based on what anyone who was there said about what they remembered or construed about the event, correct?

A:     That's correct.

Q:     ***And so in forming your opinions to answer the two questions you were asked in this case you did not rely on Mr. Sandmann's deposition transcript or his other statements about the incident; is that correct?***

A:     ***That is correct. In fact, I didn't even finish reading the Sandmann deposition. I decided that it would be a waste of their time and money for me to do that.***

Q:     I take it you did not interview Mr. Sandmann either?

A:     I have never met him or talked with him.

(Roberts Dep. 82:2-20; emphasis supplied)

\* \* \* \*

Q:     And later in your opinion on page 8, that last paragraph there on page 8, you explain that, "Although (you) subsequently read statements, interviews and depositions by Mr. Phillips and Mr. Sandmann pertaining to their encounter (that you) endeavored to form (your) opinion not on the basis of those subsequent statements, but solely on the basis of the evidence in the videos," is that right?

A:     Correct.

(*Id.* 78:25, 79:1-9)

### 3. Dr. Roberts' Opinion About the Meaning of "Blocking."

At bottom, Dr. Roberts opines that the word "blocking" as used in the Blocking Statements means what it means to an ordinary speaker. She explained her understanding of the "plain meaning" of language, both as a legal term and as a matter of common experience:

Q:     And what is the plain meaning -- use from a phrase, mean to you?

A:     I use that because it's common in the law and I think by "plain meaning" they mean what an ordinary speaker who is a native speaker, who has command of the English language, would take the expression to mean.

(Roberts Dep. 109:11-17)

\* \* \* \*

> Q:   That you've said before.  At that point plain meaning of words is a matter of everyday common experience, correct?
>
> A:   Correct.  ***You don't think about it.***

*(Id.* 111:11-14; emphasis supplied)

### 4.  "Sure Could.  Sure Could."

Dr. Roberts emphasized that her opinion concerning the Blocking Statements was based on their standard dictionary definitions understandable by the average person:

> Q:   Couldn't someone without a Ph.D. in linguistics look up the same words in the dictionary?
>
> A:   ***Sure could.***
>
> Q:   Okay, and apply those definitions to the facts as shown in the video?
>
> A:   ***Sure could.***
>
> Q:   Are you offering an opinion on the meaning of the word block that's different than the dictionary definition of the word?
>
> A:   No, I'm not, that's the plain meaning.

(Roberts Dep. 195:2-12; emphasis supplied)

* * * *

> Q:   And the average person, adult person, is capable of understanding dictionary definitions, correct?
>
> A:   I think so.

*(Id.* 113:11-14)

Dr. Roberts admitted that her knowledge of the Blocking Statements' meaning was no different than any layperson's:

> Q:   Okay.  So let's break this down.  So in analyzing question 1 you refer to dictionary definitions of "block," "will" and "impasse," right?
>
> A:   Yes.
>
> Q:   Do you think you have a better understanding or knowledge of what those words mean, bl[o]ck, will, impasse than other people do?

6

A:      No.

(*Id.* 192:25, 193:1-8)

**5.  Dr. Roberts' Testimony Is Ruled Inadmissible.**

Dr. Roberts' expert testimony about the meaning of words was previously stricken in a case based on "plain meaning" requirements under Kentucky law.   (Roberts Dep. 58:17-25, 59:1-22)

**6.  Dr. Roberts' Opinion About the Truth of the Blocking Statements.**

After opining on the plain meaning of the words, Dr. Roberts offered her opinion about whether the Blocking Statements are true or false.  In both her Report and during her deposition, Dr. Roberts' repeatedly explained that in her view the Blocking Statements can best be characterized as Phillips' *opinion* about what transpired:

> Q:      So Phillips statement seems to you, to be his conjecture that Sandmann intended to block him, right?
>
> A:      That's his interpretation of the situation.  That's the way he represents it.
>
> Q:      So it's his conjecture as you say?
>
> A:      That's the best understanding I have of it, yes.

(Roberts Dep. 84:7-14)

                                        * * * *

> Q:      You are not disputing that they may be Mr. Phillips' opinion, right?
>
> A:      I am not disputing it.

(*Id.* 90:3-5)

In fact, Dr. Roberts testified that, for that very reason, her Report's conclusions concerning the truth of the Blocking Statements were based "solely" on videos 1-18 of those that have been stipulated as authentic and admissible by the parties:

Q:   And I think you said that before.  Why -- or when did you decide to base your report solely on the videos 1 through 18?

A:   As soon as I had reviewed all the materials in the initial informal reviews that I did, I -- knowing what my expertise is, is my expertise is solely is were these statements, as I understand them, as a native speaker and a linguist, were these statements true of the situation?

   ***The only evidence I have about what actually occurred there is the videos.  All the statements subsequent are people's opinions about it or the way they represented it.***  That has no bearing on whether the statements were true.

Q:   Okay, and so that's why -- well, strike that.  So why was it important to form your opinions solely on the basis of the videos then?

A:   The video is the only direct evidence we have of what actually -- or that I have, anyway, of what occurred there.  I wasn't there and anything anybody tells me, they'd be skewed by their own -- you know, what's at stake for them.

(Roberts Dep. 79:10-25, 80:1-7; emphasis supplied)

*****

Q:   So what do you mean by "construal" then?

A:   Construal's like, for example -- in the statements, Mr. Phillips says that "the guy..."  Let me find one of the passages, that Sandmann positioned himself in front of him.  Well, it's no doubt true that Sandmann was in front of Phillips.

   Did Sandmann position himself in front of Phillips? That's another matter.  ***That's Phillips' construal of the interaction that took place between them.  So I didn't want to consider anybody else's interpretation of the situation*** because they might have interests that lend them to misunderstand what happened in front of them.

(*Id.* 81:1-14; emphasis supplied)

   Nevertheless, Dr. Roberts proceeds to opine that the view Phillips expressed in the Blocking Statements was not accurate.  In her view, "[a] reasonable native speaker of the English language reading this passage [the Blocking Statements] would take it to be false in the circumstances captured in the videos of the encounter which have been provided to me."  (Rep. 5)  Put another

8

way, Dr. Roberts offers her own opinion which disagrees with Phillips' opinion as to whether Sandmann blocked him.

### 7. Dr. Roberts Has No Expertise Or Experience In Video Analysis.

Dr. Roberts testified that she had no expertise in analyzing videos and had no training in videography:

> Q:   Do you have any special expertise in video analysis?
>
> A:   No.
>
> Q:   Do you have any special expertise in reconstructing events through analysis and videos?
>
> A:   No.

(Roberts Dep. 45:22-25, 46:1-2)

* * * *

> Q:   I take [it] you don't have specialized training in analyzing distances on videos, then?
>
> A:   No, I do not.
>
> Q:   Do you have any training in videography?
>
> A:   I believe I said I do not.
>
> Q:   So viewing the videos themselves then is not based on special expertise you have; right?
>
> A:   That is correct.

(*Id.* 134:13-21)

As a linguistics expert, Dr. Roberts has never reviewed videos in providing litigation testimony:

> Q:   Have you ever been asked to review videos in connection with any expert testimony before?
>
> A:   No.

(*Id.* 57:11-14)

8. **Reviewing the Stipulated Videos Required No Expertise: "I'm As Competent As Anybody Else."**

Dr. Roberts acknowledged that "anyone" could review the video footage in the same manner she did in order to evaluate the "truth conditions" of the Blocking Statements:

> Q:   *And you are not more qualified than anyone else to perform part 2 of the analysis, right?*
>
> A:   *No, I'm not.*
>
> Q:   So once you've determined the meaning of the passages, that's where your expertise ends as a witness, right?
>
> A:   Well, I understand what truth conditions are and I can see what's in front of my eyes, so *I'm as competent as anybody else* to assess whether, given the truth conditions, it is true or false.
>
> Q:   *But anyone could review the videos in the same way you did and determine whether the meaning you assigned to them seems to be true; right?*
>
> A:   *I think so.*

(Roberts Dep. 199:7-23; emphasis supplied)

According to Dr. Roberts, her review of the videos did not entail her professional expertise as a linguist:

> Q:   And you don't know what specifically Mr. Phillips could see in that moment, do you?
>
> A:   I know what Mr. Phillips could see if he were a normal human being standing where he was standing in that video with normal vision.
>
> Q:   And that's based on your personal experience; it is not your expertise in any kind of visual perception, correct?
>
> A:   No, I think we all -- that's what we look at when we look at a video. We know what's there. That's what I think. *It is not expertise.*

(*Id.* 207:2-12; emphasis supplied)

## STANDARD OF REVIEW

The admissibility of testimony that draws on an expert's "specialized knowledge" is governed by Federal Rule of Evidence 702, which provides that a qualified expert may testify on any subject that "will assist the trier of fact to understand the evidence or determine a fact in issue" if the testimony is sufficiently reliable. The determination of whether expert testimony is admissible is to be made by the Court pursuant to Federal Rule of Evidence 104(a). *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001); *Coffey v. Dowley Mfg.Inc.*, 89 F. App'x 927, 930 (6th Cir. 2003). This determination begins with the requirement that an expert witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Even if the expert is qualified, his or her testimony is admissible only if:

    (1) the testimony is based upon sufficient facts or data;

    (2) the testimony is the product of reliable principles and methods; and

    (3) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*; *Daubert*, 509 U.S. at 591. The party seeking to present an expert's testimony must establish each of these elements by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n. 10; *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000); Fed. R. Evid. 702, Advisory Comm. Notes on 2000 Amendments ("Advisory Comm. Notes") ("[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

A Rule 702 admissibility determination therefore entails two steps. First, the court must determine whether an expert is qualified. If sufficiently qualified, the court must then determine whether the expert's opinion is reliable and relevant in that it will assist the trier of fact. This

involves "a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002); *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir. 1997); *see also* Advisory Comm. Notes ("If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably."). Finally, Rule 702 requires a sufficiently rigorous analytical connection between the expert's methodology and conclusions, and "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d. at 266, 270 (affirming trial court's exclusion of experts where there was "too great an analytical gap"); *Nelson*, 243 F.3d at 250. Notably, "[a]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Goebel v. Denver & Rio Grande Western R.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (internal quotation marks and citation omitted); *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rule of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Rule 702 "imposes a special obligation upon a trial judge" to police these policies and to serve as a gatekeeper against expert testimony that is not sufficiently reliable or helpful to the jury. *Daubert*, 509 U.S. at 597; *Kumho Tire*, 526 U.S. at 147 (holding that the *Daubert* principles apply to all forms of expert testimony). In doing so, district courts must "resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it the weight it deserves." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993)

(citation and alterations omitted).  Rather, they must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.  To that end, expert testimony must rest on "more than subjective belief or unsupported speculation" to be reliable.  *Daubert*, 509 U.S. at 590.

In addition to the requirements imposed by Rule 702, Federal Rule of Evidence 704 prohibits expert testimony that merely states a legal conclusion.  *Stoler v. Penn. Cent. Transp. Co.*, 583 F.2d 896, 899 (6th Cir. 1978).  Here, Dr. Roberts posits that the Blocking Statements are materially false, without providing a distinct and specialized meaning different from that capable of being applied by the Court at the summary judgment phase of the case.  As a flagrant attempt to displace the judgment of the Court on an ultimate legal issue, her testimony and Report should also be prohibited under Rule 704.

## ARGUMENT

### POINT I

### PLAINTIFF'S EXPERT LINGUIST'S TESTIMONY ABOUT THE DICTIONARY DEFINITION OF "BLOCKING" IS INADMISSIBLE AND SHOULD BE STRICKEN

As a threshold point, Dr. Roberts is not qualified to opine on the truth or falsity of the Blocking Statements.  Rule 702 requires Dr. Roberts to possess specialized "knowledge, skill, experience, training, or education" that form the basis for her opinions. Fed. R. Evid. 702.  While Defendants have no quarrel with Dr. Roberts' qualifications as a linguist, her opinions about the plain meaning of the Blocking Statements are patently inadmissible because she provides no specialized knowledge that will assist the Court in ruling on the parties' summary judgment motions.  Dr. Roberts' opinions, as she admitted, did not require any special expertise but, instead, were based on standard dictionary definitions of the words "blocking" and "impasse" readily

13

comprehensible to any layperson who could construe them in the same manner. (Roberts Dep. 199:19-23) Indeed, Dr. Roberts conceded that her knowledge of the Blocking Statements' meaning was in no way superior to a layperson's. (*Id*. 192:25, 193:1-8) No party to this case is disputing that the dictionary defines "blocking" in the way that it does.

Dr. Roberts further conceded in her deposition that she has no specialized training or expertise in analyzing video footage — the sole basis for her Report's conclusions. (Roberts Dep. 45:22-25, 46:1-2, 134:13-21) In fact, her deposition testimony revealed that she has never reviewed videos as an expert witness, and has never testified about video footage in determining the meaning or veracity of the statements at issue in a defamation case (or any other case, for that matter). (*Id*. 57:11-14) Dr. Roberts has also never published any peer-reviewed articles on her approach (*Id*. 47:22-25, 48:1-7), and nothing is known about its potential error rate. *See State v. Conway*, 193 N.J. Super. 133 (N.J. Sup. Ct. App. Div. 1984) (rejecting testimony from expert linguist and noting absence of scientific or legal textbooks on the topic of linguistic analysis of tape recordings), *cert. denied*, 97 N.J. 650 (1984). This is hardly a surprise, given that Dr. Roberts is offering personal, subjective, non-verifiable impressions of the videos, which concern an event that, as she herself admitted, different people might perceive differently. (*See* Roberts' Dep. 142-43); *Greene v. Phila. Media Network, Inc.*, 40 Pa. D.& C. 5th 157, 172, 2014 Phila. Ct. Com. Pl. LEXIS 236, at *19 (Pa. Com. Pl. Phila Cnty., Aug. 1, 2014) (excluding expert's "conclusion about whether a statement in the article was false" where based "not on any proven facts" but rather on his personal viewpoint). Her opinion should be excluded on this ground alone.

This is not a case involving cryptic satellite photos, grainy surveillance video, or abstruse film images that require technical knowledge in order to be deciphered. Even if it were, Dr. Roberts does not possess any qualifications to engage in such an analysis. Moreover, as Plaintiff

acknowledges, the "clear video evidence" stipulated to by the parties "requires no interpretation, no mediating explanation, no spin." (Motion 2)  The Report will therefore not share any technical or other specialized knowledge of assistance to the Court in understanding or determining any issue on summary judgment. *Daubert*, 509 U.S. at 592; *Kumho Tire Co.*, 526 U.S. at 147.  Under the circumstances, Dr. Roberts fails to meet the minimum qualifications for an expert witness under Rule 702.  Her testimony and Report should be excluded.

**POINT II**

**THE PROPOSED EXPERT TESTIMONY IS
UNTESTED, UNTESTABLE, AND UNRELIABLE**

A. <u>**Courts Have Repeatedly Barred Linguistic Testimony In Defamation Cases As
Unhelpful and Scientifically Invalid.**</u>

Even in cases where a party argues that the meaning of words may be unclear or ambiguous — which is not the case here — courts have repeatedly held that linguistic testimony introduced to offer an opinion on the meaning of words or for any other purpose in defamation cases does not meet the requirements of Federal Rule of Evidence 702.  *See Tilton v. Capital Cities/ABC, Inc.*, 938 F. Supp. 751, 752 (N.D. Okla. 1995) (expert linguist prohibited from testifying as to the "meanings expressed and implied" by television news segment), *aff'd*, 95 F.3d 31 (10th Cir. 1996); *McCabe v. Rattiner*, 814 F.2d 839, 843 (1st Cir. 1987) (trial court properly excluded expert testimony on meaning of the word "scam" in defamation action); *Brueggemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452, 465-66 (N.D. Tex. 1988) (linguistic analysis to show actual malice excluded in libel action); *World Boxing Council, Inc. v. Cosell*, 715 F. Supp. 1259, 1265 (S.D.N.Y. 1989) (same); *Seropian v. Forman*, 652 So. 2d 490, 497-65 (Fla. 4th Dist. Ct. App. 1995) (holding that trial court's allowance of expert testimony about meaning of allegedly defamatory words was erroneous).  As these decisions make clear,"[j]udges have little patience with parties who attempt to create the illusion of science by asking an expert to testify about the meaning of ordinary

15

language that the judge and jury can understand without any help."  Lawrence Solan, *Can The Legal System Use Experts on Meaning*, 66 Tenn. L. Rev. 1167, 1193 (1999).  That is exactly the illusion Plaintiff is trying to create here.

And while it is directed to the context of a trial rather than summary judgment, the reasoning in *Tilton v. Capital Cities/ABC Inc.*, where the court rejected expert linguistic opinion testimony about the meaning of allegedly libelous statements in a television broadcast, is instructive:

> In the instant case, the Court concludes that [the linguist]'s proposed testimony relates to matters within the common knowledge of an average juror.  Similar to the courts in [other cases], the Court finds that [the linguist]'s testimony would not assist the jurors in reaching a determination as to whether plaintiff was defamed . . . by the *PrimeTime Live* broadcasts.  In the Court's view, the jury is clearly capable of determining what the average viewer from a one time viewing understood as expressed or implied by the *PrimeTime Live* broadcasts in regard to plaintiff.

938 F. Supp. at 753.  So too here, the proposed testimony should be excluded pursuant to Federal Rule of Evidence 702 as the Court needs no assistance with the Blocking Statements.

The same result was reached in *Greene v. Phila. Media Network*, 40 Pa. D.& C. 5th at 161, 2014 Phila. Ct. Com. Pl. LEXIS 236 at *4, where a defamation plaintiff, in opposing a newspaper's motion for summary judgment, sought to introduce the testimony of a linguistics expert on the issue, *inter alia*, of "what the articles mean to the average reader."  Applying Pennsylvania's analog to Rule 702, the court excluded the expert's report, holding that the "proffered testimony does not meet [Pa. R. Evid. 702(a)'s] requirements because average jurors are inherently qualified to read the articles . . . without the aid of an expert[.]"  *Id.* at 173, *20  Here, as in *Greene*, "having a so-called expert tell them what is common sense and common knowledge would be invading their province by purporting to provide them information that the average layperson already possesses."  *Id.* at 175, *23.

*World Boxing Council, Inc. v. Cosell* further exemplifies the longstanding judicial resistance to the introduction of expert linguistic testimony in defamation cases.  In *Cosell*, the well-known sports journalist authored a book accusing the plaintiff of awarding lucrative prizefights in an improper manner.  In opposition to a motion for summary judgment, the plaintiff attempted to offer an expert linguist's "view of Cosell's subjective state of mind when he wrote the passage" at issue through a comparison of the book with the underlying source articles.  715 F. Supp. at 1264.  The court short-circuited the attempt:

> A layman is perfectly capable of reading Cosell's book and comparing it with the articles he claims to have relied on, without the "help" of a linguistics expert.  Therefore, [the expert]'s testimony would waste the time of both the jury and the court.

*Id.*  The same can certainly be said here, especially given Dr. Roberts' acknowledgments that any layperson, let alone the Court, is capable of understanding the standard dictionary definitions of the Blocking Statements.  (Roberts Dep. 113:11-14, 199:19-23)  Dr. Roberts' hyper-technical parsing of those passages as requiring "active, intentional" blocking is contrary to well-established defamation law principles: "[h]air splitting analysis of language has no place in the law of defamation, dealing as it does with the impact of communication between ordinary human beings."  *Barger v. Playboy Enters.,* 564 F. Supp. 1151, 1155 (N.D. Cal. 1983) (internal quotations and citation omitted), *aff'd,* 732 F.2d 163 (9th Cir.), *cert. denied,* 469 U.S. 853 (1984).

Notably, Dr. Roberts admitted that, based on the "very strict legal tradition in Kentucky of sticking to the plain meaning of the terms in question" (Roberts Dep. 59:7-9), her testimony as a linguistics expert was ruled inadmissible in *John W. Gilbert, M.D., et al. v. Comm of Ky., Cabinet for Health and Family Srvcs.*, No. 05-CI-00275 (Ky. Cir. Ct. Franklin Cnty.).  Because, in her own words, Dr. Roberts' knowledge of the Blocking Statements' meaning is no better or different than that brought to bear by the Court in determining whether Plaintiff has satisfied his First

Amendment burden of proving their material falsity, her testimony should be excluded under Federal Rule of Evidence 702.

**B. Dr. Roberts' Opinion, Based On Watching Videos, That the Blocking Statements Are False Is Inadmissible and Should Be Stricken Because It Is Not Based on Any Reliable or Accepted Methodology.**

*Daubert* outlines four non-exclusive factors germane to the reliability inquiry under Federal Rule of Evidence 702: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; and (4) whether the technique or theory has been generally accepted in its field. *Daubert*, 509 U.S. at 592-94; *see also Kumho Tire*, 526 U.S. at 149-52 (noting the inquiry is flexible and may be tailored to apply to cases based on specialized, rather than scientific, knowledge). Additional factors were identified in the Advisory Committee Commentary that accompanied the 2000 revision to Rule 702 in light of *Daubert*, including: "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;" "[w]hether the expert has adequately accounted for obvious alternative explanations;" and "whether [the expert] developed [the] opinions expressly for purposes of testifying." Advisory Comm. Notes. All of these factors are problematic here.

Applying these indicia of reliability, it is clear that Dr. Roberts' "methodology" — if it can even be called that — fails Federal Rule of Evidence 702's basic requirements. <u>First</u>, the underlying "facts and data" consisted solely of the videos and the standard definitions of the Blocking Statements as provided by three dictionaries — nothing more and nothing less. According to Dr. Roberts' own statements under oath, no specialized training or technical expertise was required, first, to watch what unfolded on the videos, or second, to understand the plain language of the Blocking Statements. (Roberts Dep. 113:11-14, 199:19-23) *Kentucky Speedway, LLC v. NASCAR, Inc.*, No. 05-138, 2008 WL 113987, at *4 (E.D. Ky. Jan. 7, 2008) (Bertelsman,

J.) ("Where, as here, an expert offers an opinion that is based on a combination of two methodologies, each methodology must meet the *Daubert* criteria, and the combined methodology must meet those criteria also.") (granting defense motion to strike plaintiff's expert witness testimony in context of summary judgment motion).

Rather, the issue here is straightforward: based on the undisputed facts in the record, which includes the testimony of the actual participants about the events depicted in the videos, can the Blocking Statements be understood as materially false — a question of law for the Court on summary judgment. *Yeiser v. DG Retail, LLC*, No. 18-cv-0320, 2021 U.S. Dist. LEXIS 73365, at *19 (D. Colo. Apr. 16, 2021) ("Whether a statement was materially false . . . is a question of law which may be resolved at the summary judgment stage."); *Hatfill v. New York Times Co.*, 488 F. Supp. 2d 522, 532 (E.D. Va. 2007) (granting summary judgment to defamation defendant because plaintiff "has not come forth with evidence demonstrating that the statements are materially false," and noting that "[t]his showing of falsity is required of all defamation plaintiffs where the allegedly defamatory statements touch upon a matter of public concern"), *aff'd*, 532 F. 3d 312 (4th Cir. 2008); *Bennett v. Cisco Sys., Inc.*, 63 F. App'x 202, 207-08 (6th Cir. 2003) (affirming district court's grant of summary judgment where plaintiff failed to demonstrate a genuine issue of material falsity as to allegedly defamatory statements).

Second, Dr. Roberts' decision not to review other available information bearing directly on the material falsity issue is a glaring omission from her Report. Most importantly, Dr. Roberts ignored the deposition testimony of her own client, along with all statements by Sandmann, Phillips, or anyone else. Contrary to Rule 702, the "facts and data" Dr. Roberts relied on completely fail to account for "obvious alternative explanations" and are patently insufficient to support her opinion that the Blocking Statements were materially false.

Third, there is nothing to support that Dr. Roberts' approach in reviewing the videos in order to determine the "truth conditions" of the Blocking Statements based on their plain meaning has ever been tested. Her method of review cannot be validated for the simple reason there is nothing to validate. Stripped of their technical jargon and veneer of academic respectability, Dr. Roberts' opinions, as she admitted, did not require any special expertise but, instead, were based on standard dictionary definitions of the words "blocking" and "impasse" readily comprehensible to any layperson who could construe them in the same manner and every bit as well as she based on the events depicted in the videos. (Roberts Dep. 113:11-14, 195:2-12, 199:7-23, 207:2-12)

All things considered, Dr. Roberts' Siskel-and-Ebert review process does not qualify as a "methodology" for purposes of Rule 702. As described in her deposition, she watched video footage and relied on her personal perceptions of what was depicted therein in opining that the Blocking Statements were materially false. While watching the videos and giving the Blocking Statements their plain meaning — again, steps that, as Dr. Roberts testified, any layperson is capable of performing equally as well as she — were necessary components of evaluating them, this does not mean that Dr. Roberts' two-step review process is reliable in any evidentiary sense. Indeed, her explanation about her method "is so nebulous, subjective, and lacking in rigor and detail as to cast serious doubt . . . on the reliability of her opinion testimony[.]" *United States. v. Stagliano*, 729 F. Supp. 2d 222, 230 (D.D.C. 2010) (citation omitted). Her method is neither scientific nor accepted; her opinions and testimony should be excluded.

Dr. Roberts' testimony is plainly not the sort that will assist the Court in the context of the parties' Rule 56 motion practice. In her own words, "[i]t is not expertise." (Roberts Dep. 207:12)

## POINT III

## BY PRONOUNCING A LEGAL CONCLUSION, THE PROPOSED EVIDENCE VIOLATES RULE 704

Plaintiff is offering evidence from Dr. Roberts in an attempt to satisfy his constitutional burden of proving the material falsity of the Blocking Statements.  (Rep. 5)  Her testimony and Report therefore not only embrace an ultimate issue in the case, but unabashedly violate the prohibition that her opinions and judgment may not substitute for the Court's by pronouncing a legal conclusion.  Fed. R. Evid. 704; *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) ("The problem with testimony containing a legal conclusion is in conveying the witness' [*sic*] unexpressed, and perhaps erroneous, legal standards to the jury.  This invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.") (internal quotations and citations omitted); *United States v. Nasr*, No. 18-7-KKC, 2021 U.S. Dist. LEXIS 22264, at *17 (E.D. Ky. Feb. 5, 2021) (stating that "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms" and excluding expert testimony that attempted to provide a legal opinion) (internal quotations and citation omitted).

Simply put, "[t]he expert linguist's job is not to tell speakers of English how they must understand the language that they already speak."  Solan, 66 Tenn. L. Rev. at 1169.  Dr. Roberts' attempt to do so here should be disallowed as a usurpation of the Court's role in determining whether Plaintiff has satisfied his burden of proving the material falsity of the Blocking Statements — which he has not. *Hatfill v. New York Times Co.*, 488 F. Supp. 2d at 533-34 (granting newspaper summary judgment because plaintiff "cannot carry his burden of proving the material falsity of any of these statements as a matter of law").  This determination does not require testimony from an outside expert — as Dr. Roberts freely admits.  (Roberts Dep. 195:2-12, 199:19-23, 207:7-12)

## CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that the Court grant this motion and bar Plaintiff from introducing the Report and testimony of Dr. Craige Roberts (1) in support of Plaintiff's motion for partial summary judgment and (2) in opposition to Defendants' joint and supplemental motions for summary judgment.

Dated: February 11, 2022                          Respectfully submitted,

Nathan Siegel (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

/s/ Robert B. Craig
Robert B. Craig (KBA 15590)
TAFT STETTINIUS & HOLLISTER LLP
50 East River Center Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

*Counsel for Defendants ABC News, Inc., ABC News Interactive, Inc., and The Walt Disney Company*

/s/ Darren W. Ford
J. Stephen Smith (KBA 86612)
Darren W. Ford (KBA 95373)
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.law
dford@graydon.law

John C. Greiner (*pro hac vice*)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

*Counsel for Defendant The New York Times
Company d/b/a The New York Times*

/s/ Natalie J. Spears
Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com

Jared A. Cox
DENTONS BINGHAM GREENEBAUM LLP
101 South Fifth Street, Suite 3500
Louisville, KY 40202
Phone: (502) 589-4200
jared.cox@dentons.com

Jessica Laurin Meek *(pro hac vice)*
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
jessica.meek@dentons.com

*Counsel for Defendants CBS News Inc.,*
*ViacomCBS Inc., and CBS Interactive Inc.*

/s/ Michael P. Abate
Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main Street, 4th floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel *(pro hac vice)*
Cynthia E. Neidl *(pro hac vice)*
Kelly L. McNamee *(pro hac vice)*
Candra M. Connelly *(pro hac vice)*
GREENBERG TRAURIG, LLP
54 State Street, 6th floor
Albany, NY 12207
Phone: (518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Counsel for Defendants Gannett Co., Inc. and*
*Gannett Satellite Information Network, LLC*

/s/ Kevin T. Shook
Kevin T. Shook *(pro hac vice)*
FROST BROWN TODD LLC
10 West Broad Street
Columbus, OH 43215
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Theresa A. Canaday
Samuel W. Wardle
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
tcanaday@fbtlaw.com
swardle@fbtlaw.com

Michael E. Nitardy
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 283-5902
mnitardy@fbtlaw.com

Ryan W. Goellner (*pro hac vice*)
FROST BROWN TODD LLC
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

*Counsel for Defendants Rolling Stone, LLC and Penske Media Corporation*

*ACTIVE 62796160v9*