# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

| | |
|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, <br><br> Plaintiff, <br> v. <br><br> CBS NEWS INC., d/b/a CBSN; <br> VIACOMCBS INC.; and <br> CBS INTERACTIVE INC. <br><br> Defendants. | Case No. 2:20-cv-24-WOB-CJS |

## CBS DEFENDANTS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Jared A. Cox (KBA #92523)
DENTONS BINGHAM GREENEBAUM LLP
101 South Fifth Street, Suite 3500
Louisville, Kentucky 40202
Phone: (502) 589-4200
jared.cox@dentons.com

Natalie J. Spears *(pro hac vice)*
Gregory R. Naron *(pro hac vice)*
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com

Jessica Laurin Meek *(pro hac vice)*
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, Indiana 46204
Phone: (317) 635-8900
jessica.meek@dentons.com

*Counsel for Defendants CBS News Inc., ViacomCBS Inc., and CBS Interactive Inc.*

Within hours of the encounter on the National Mall, Plaintiff Nicholas Sandmann, sitting on the bus home, typed out a message on his phone: "The man [Nathan Phillips] played his drum in my face but unlike others at my school [I] didn't step out of the way because he was trying to intimidate us." He then sent it to Charlie Kirk, a prominent conservative. A few hours after that, a friend texted Sandmann, "Can [I] ask what made you stand in front of the indian guy[?]" Sandmann candidly typed out another message on his phone: "[T]he whole thing with the black people calling us things and the guy moving through the crowd trying to intimidate us[.] [I]t just made me want to stand up for the school[.]"

Fast forward to Sandmann's deposition. There, consistent with his contemporaneous messages, Sandmann forthrightly testified that he stood in front of Phillips when others stepped away because he "figured it was time for someone to plant their foot" and "just face up." Sandmann added that he "wasn't going to move." It is thus unsurprising that Sandmann now admits, as he must, that Phillips could have "perceived" that he intended to "stop his path forward"—because, indeed, that is exactly what Sandmann intended to do in his own words.[1] And, it is even less surprising that Phillips, in fact, did perceive Sandmann as doing so.

In light of this, Sandmann has no claim against CBS because CBS reported exactly what Sandmann says is the truth: Sandmann appeared to "position" himself in front of Phillips in a way that "sort of stopped" Phillips' "exit." Left with an utterly meritless claim, Sandmann devotes just two paragraphs to CBS in his Supplemental Response. (Doc. 70 at 12–13.) Even then, he spends those two short paragraphs responding to two legal arguments that CBS did not even make. Remarkably, he has nothing to say about the actual CBS Report that he filed a multi-million dollar

---

[1] Sandmann's admissions are quoted in the *Sandmann* Defendants' Joint Statement of Facts ("Jt. SOF") ¶¶ 39, 40, 46, Doc. 59-1.

1

claim over. He proceeds as if his own admissions do not exist and as if what the CBS Report actually said and showed does not matter.

His silence his telling: Sandmann ignores all of this because he has no grounds on which to withstand summary judgment. The whole point of the CBS Report was to explain that a longer video had emerged after the original, shorter viral video: "The problem is the story as originally reported is incomplete. We have more information that provides better context and depth to what actually happened." (Doc. 60-3, 60-4 at 1.) CBS then reported the full picture—including that members of a group called the Black Hebrew Israelites were yelling profanities at the students, that Phillips inserted himself into the situation, and that CBS did not hear the students saying, "Build that wall"—all while showing excerpts of two videos that Sandmann says show the truth.

Over two years after filing this lawsuit, Sandmann has pointed to nothing that supports his chief, but provably false, allegation that the CBS Report "accus[ed]" him "of racist misconduct at the National Mall." (Doc. 1 at 1 ¶ 1.) Instead, all he has demonstrated is that CBS reported Phillips' opinion of the events that day (just as it did with Sandmann's own opinions), and disclosed the relevant and true facts on which these opinions were based and which Sandmann does not meaningfully contest. Judgment should be entered in favor of CBS.

    **A.**    **Sandmann failed to engage with the vast majority of arguments and facts raised in CBS' Supplemental Memorandum requiring summary judgment in CBS' favor.**

Sandmann attempts to skirt the undisputed facts by dismissing CBS' Supplemental Memorandum (and other Defendants' respective supplemental memoranda) as "add[ing] additional facts, but no new arguments." (Doc. 70 at 3.) This evidences Sandmann's fundamental misconception about this litigation, namely, that he can merely invoke the word "blocked" to avoid summary judgment as to each of the individual reports he has put in issue by suing the various defendants in these many cases. He cannot.

Instead, what Sandmann must do to avoid summary judgment as to CBS is demonstrate that there are genuine disputes as to any material fact *relating to the CBS Report*. CBS' Supplemental Memorandum thus does exactly what Rule 56 requires but what Sandmann refuses to engage in: explain why no such genuine disputes exist as to any material fact in the CBS Report. He fails to do so because he cannot; discovery has confirmed that no such disputes exist.

CBS reported Phillips' expression of his own subjective perception of a confusing and emotionally charged encounter—which Sandmann admits Phillips may have held—and disclosed underlying facts that Sandmann does not and cannot contest. Specifically, CBS presented additional context in a story about competing perceptions on an event in the world. Just as Sandmann is entitled to his own perceptions of what happened and why, so too is Phillips. The CBS Report's framing—presenting Phillips' views as one perspective on a hotly contested event and allowing readers and viewers to judge based on the disclosed facts, including the video that Sandmann maintains shows the "truth"—is the essence of pure opinion.

But Sandmann's Supplemental Response does not even attempt to grapple with the actual CBS Report. He dismisses as irrelevant that CBS reported the events leading up to the encounter (*see* Doc. 70 at 8), which Sandmann said he deemed critical at this lawsuit's outset. (Compl. [Doc. 1] at 4, 48, ¶¶ 15, 251 (claiming (wrongly) that CBS "failed to provide . . . a complete picture of the January 18 Incident" and "inexcusably relied on a false, incomplete, and out-of-context viral video.")). But right out of the gate, CBS framed its entire Report as providing "more information that provides better context and depth to what actually happened" and contrasting "the original clip that most people saw" with "another video nearly two hours in length . . . *suggest[ing] that the story is not as originally reported*." (Doc. 60-3, Doc. 60-4 at 2–3 (emphasis added).)

That nearly two-hour video (the "Banyamyan Video," now stipulated as Video 4, Doc. 54) contains what Sandmann describes as "[t]he truth." (Doc. 1 at 4, 48, ¶¶ 16, 250.) CBS not only

3

described in the CBS Report what the Banyamyan Video shows—that "Mr. Phillips walks into the middle of the group. Inserts himself in the situation" between the students and the Black Hebrew Israelites—but also played that portion of the Banyamyan Video with Phillips inserting himself:





(Doc. 60-3, screenshots of 1:12 and 1:31 of the CBS Segment; *see also* Doc. 60-4 at 3; *cf.* Complaint [Doc. 1] at 51, ¶ 268 (containing Sandmann's knowingly false assertion that CBS failed to consult video evidence available online "demonstrating that Phillips specifically approached the students").) Sandmann conveniently ignores CBS' emphasis on the Banyamyan Video because it fully disproves one of the foundational allegations in his complaint.

Sandmann's cavalier approach to the truth in this litigation does not end there. In his Omnibus Memorandum in Opposition ("Opp."), Sandmann contends that "Phillips could have just gone around Nicholas" but "ignored clear pathways on his right that led directly to the top of the

4

Lincoln Memorial." (Doc. 69 at 17.)[2] But if anyone is ignoring anything, it is Sandmann and, again, he is ignoring the actual content of the CBS Report. CBS never hid this allegedly vital fact. On the contrary, CBS actually showed a video of the encounter (now stipulated Video 16, Doc. 54) which Sandmann claims shows open space to Phillips' right through which Sandmann says Phillips could have "escaped":





(Doc. 60-3, screenshots of 3:23 and 3:30 of the CBS Segment; *see also* Doc. 60-4 at 5; Pl. Opp. (Doc. 69) at 21; Doc. 69-2 at 141 (Sandmann's "expert" stating that Video 16 shows "at least a 3 foot corridor between Sandmann and the group of students to his left going up the stairs").) This video evidence is exactly the type of disclosed facts that put the viewer "in as good a position" as the speaker to "judge" whether Phillips could have gone around Sandmann or whether Sandmann

---

[2] Sandmann's "clear pathways" concept is founded on the fallacy that the existence of a "path" at some point establishes that Phillips could *not* have perceived that Sandmann "sort of stopped [his] exit" at *any* point during the encounter (which Phillips indisputably did perceive). (*See* the *Sandmann* Defendants' Joint Brief ("Jt. Br.") at 32, Doc. 59-1 at 41; Jt. SOF ¶¶ 43–44.) Indeed, Sandmann concedes that Phillips could have had that perception as a result of Sandmann's deliberate conduct. (Jt. SOF ¶ 46.)

5

sort of stopped Phillips' exit. *Lassiter v. Lassiter*, 456 F. Supp. 2d 876, 882 (E.D. Ky. 2006) (finding where the challenged matter "discloses the facts on which the opinion was based," judgment must be entered for the defendant because the matter is "pure opinion"), *aff'd*, 280 F. App'x 503 (6th Cir. 2008).

Moreover, though Phillips need not have sincerely believed that Sandmann intended to "sort of stop" him for the CBS Report to be protected opinion, Sandmann's own admissions demonstrate that Phillips' perception was spot-on. Sandmann believed that by moving through the crowd, Phillips was trying to intimidate the students. (Jt. SOF ¶¶ 38–40.) After some time, Sandmann determined "enough [was] enough" and that he would do something to "stand up for the school." That something was deciding **not to "step out of the way**." (*Id.* ¶ 40 (emphasis added); *see also id.* ¶ 47 (if an older person wanted to intimidate him, Sandmann could not "find any compelling reason" to "**clear a place for them to move**") (emphasis added).) And so, by deciding to "plant" while others were clearing a path, Sandmann sent a message that he "wasn't going to move" when Phillips approached him. (*Id.* ¶ 40.) Phillips picked-up on Sandmann's intentionality, taking Sandmann's actions to mean he did not want to let him pass. (*Id.* ¶ 43.)

Alternatively, even if Phillips' statements were treated as statements of fact and not expressions of his own subjective perceptions, Sandmann cannot demonstrate any genuine dispute as to whether those statements are materially false, or, stated another way, not substantially true.[3] If anything, the remarkable consistency between Phillips' statements to CBS and Sandmann's own admissions at the time and later, at his deposition, demonstrates that the CBS Report is substantially true under governing law, as Sandmann admitted the "gist" of what he claims to be

---

[3] Incredibly, in both his Omnibus Memorandum and Supplemental Response, Sandmann ignores that falsity is his burden under the U.S. Constitution, and the standard is substantial truth. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 767–77 (1986); *see* discussion, Jt. Br. at 44–45, Doc. 59-1 at 54.

6

the defamatory import of the Report: that he deliberately did not move aside and meant to stand in Phillips' way instead of "letting him go," in order to send a message. *Estepp v. Johnson Cnty. Newspapers, Inc.*, 578 S.W.3d 740, 744 (Ky. Ct. App. 2019). This is to say nothing of the video evidence that further supports the substantial truth of the CBS Report. (*See, e.g.*, Jt. SOF ¶ 37 (citing stipulated Videos 10 and 17 showing other students making a path for Phillips to move forward towards the Lincoln Memorial); *id.* ¶ 41 (citing Video 17 showing Sandmann moving towards his left just as Phillips was approaching).)

In short, Sandmann never tells the Court what the CBS Report got wrong because the factual record demonstrates that the CBS Report got the underlying facts right and conveyed his and Phillips' opinions about those facts. Facing dismissal of his claims, Sandmann resorts to arguing points of law that are completely irrelevant to CBS' motion for summary judgment. (Doc. 70 at 12–13 (confronting neutral reportage and actual malice arguments that CBS never makes).) Much as Sandmann cannot simply ignore the CBS Report's content, he cannot ignore CBS' actual arguments that demonstrate that summary judgment is appropriate here.

### B. Sandmann's attempt to import into the CBS Report an accusation of "racist misconduct" only demonstrates that the Report has no such defamatory meaning.

Sandmann's claim against CBS suffers from another fundamental defect beyond the fact that the CBS Report merely reports Phillips' opinion based on disclosed, truthful facts. For two years, Sandmann has claimed that the CBS Report is defamatory because it "accus[ed]" Sandmann of "racist misconduct," but there is no longer any genuine dispute that the CBS Report does no such thing. (Doc. 1 at 1, ¶ 1.) Again, though, Sandmann simply refuses to engage, choosing instead to assert that it is "not necessary that CBS accuse Nicholas of racist misconduct; it is enough that Phillips did, when he claimed that Nichol[a]s blocked his peaceful protest and prevented his escape." (Doc. 70 at 12.) In a word, Sandmann is wrong.

7

As a threshold matter, Phillips never once accused Sandmann of racist misconduct in the CBS Report.[4] Again, Sandmann is just making things up. What the undisputed (and fully authenticated) evidence now shows at this stage is that neither CBS nor Phillips ever even suggested any racist misconduct; instead, CBS reported only Phillips' perception that Sandmann "positioned" himself in front of him and that "sort of stopped [his] exit." There is plainly nothing about racism in the complained-of statements (or in the fictitious "blocked his peaceful protest and prevented his escape" statements, for that matter).

Doing all he can do to keep his claims alive, Sandmann retreats from his bold assertion that CBS republished Phillips' narrative "accusing [Sandmann] of racist misconduct" (Doc. 1 at 1, ¶ 1), admitting that Phillips "**didn't directly** accuse Nicholas of racism or indifference to the plight of the Native community or some other matter." (Doc. 70 at 7 (emphasis added).) Instead, Sandmann argues, Phillips "let his audience draw its own conclusions from Phillips' false and misleading account of the facts." *Id.* He did so, Sandmann says, by stating that he "was merely engaging in a peaceful demonstration" and "beating a ceremonial drum on the steps of the Lincoln Memorial, ostensibly to bring attention to the 'cause' of his people." *Id.* And, he juxtaposed that, he argues, with Sandmann who was "**a white male wearing a pro-Trump hat from a Catholic school**, whom Phillips accused of bigotry and insensitivity: **not by using those words or any like those words,** but by misstating the facts . . . ." (*Id.* (emphasis added).)[5]

---

[4] Further, the only time CBS used the word "block" is to report *Sandmann's* perspective that no one blocked Phillips' path. (Doc. 60-2 at 2 ("Sandmann said he didn't speak to Phillips, nor did anyone block his path.").) And as discovery has revealed, Phillips was not protesting anything at the time of the encounter. Phillips, consistent with what CBS reported, drummed and prayed in front of the teenagers hoping to calm the situation. As he felt the crowd surrounding him, Phillips decided to try to exit the situation by going up towards the Lincoln Memorial to finish his prayer—but Sandmann, unlike other teenagers, did not move away and appeared to position himself directly in front of Phillips and stand in his way. (Doc. 59-2 at 5–7, ¶¶ 14, 17, 21–23.)

[5] Sandmann's insistence that Phillips was a "good advocate" catering to "his audience" demonstrates he is still peddling his theory that Phillips and his so-called "companions" conspired

This argument is hopeless. First, it is internally inconsistent. Sandman admits that Phillips "didn't directly accuse Nicholas of racism or indifference" only to argue, sentences later, that "Phillips accused [Sandmann] of bigotry and insensitivity." *Id.* Second, it is—once again—completely unmoored from what Phillips actually told CBS and what CBS actually reported.

What this argument does, instead, is demonstrate a fatal flaw in Sandmann's case. He cannot rely on the words Phillips *actually used*, so he resorts to juxtaposing his accurate self-description as a "white male wearing a pro-Trump hat from a Catholic school" with Phillips as a Native American man. But if this were sufficient to make out a defamation claim, then any reporting on *any* politically charged controversy involving a white person and a person of another race would be deemed, automatically, a defamatory allegation of racist misconduct. *See, e.g.*, *Sandmann v. WP Co.*, 401 F. Supp. 3d 781, 795 (E.D. Ky. 2019) (mainstream political slogans (such as "Build the Wall" or "MAGA") cannot be a defamatory accusation of racism). That is not and cannot be the case; were it otherwise, the news media could simply never have reported on the confrontation at the National Mall.

At any rate, Sandmann's argument, even if it had legs, which it does not, is simply inapplicable to the CBS Report. As explained at length in CBS' Supplemental Memorandum, an objective view of the CBS Report actually dispels the defamatory meaning that Sandmann has invented. Moreover, he makes no effort to demonstrate a genuine dispute on this point. Again, he does not do so because he cannot. For example, CBS drew into doubt the "build that wall" accusation in other earlier reports ("We never heard the students saying, 'Build that wall'") and instead reported that the students appeared to be doing a sports chant. (Doc. 60-3, *see also* Doc. 60-4 at 3.) CBS also did not suggest Sandmann engaged in "menacing racial intimidation of

---

to create a viral moment to advance their political agenda. (*See* Doc. 1 at 3, ¶ 11.) But discovery has disproven Sandmann's conspiracy theory. (*See* Jt. Br. at 37–40, Doc. 59-1 at 46–47.)

9

Phillips" or physically or seriously threatened Phillips. (*Cf.* Doc. 1 at 1, ¶¶ 2–7.) Instead, CBS included extensive video providing the context of the confrontation, reported Phillips' impression that Sandmann at times looked emotional (like he was going to "break down") and showed Sandmann standing silently ("he didn't say nothing"), looking at Phillips with his arms by his side. (*See* Doc. 60-3, Doc. 60-4 at 6–7.) Finally, it reported that it was the Black Hebrew Israelites—not the students—who were being antagonistic. As such, there can be no genuine dispute as to whether the CBS Report alleges racist misconduct on behalf of Sandmann—it does not.

## CONCLUSION

In the end, Sandmann's defamation claim is premised on now provably false allegations that the CBS Report uncritically conveyed the message of the original, viral video and initial reporting on it. It did not. Instead, the CBS Report, published nearly two days after the event, *debunked* the premise for the "common and widespread public reaction" on social media. (Opp. p. 25, Doc. 69 at 32.) It then reported the very facts that Sandmann falsely claims it omitted. Stripped of Sandmann's concocted "racist misconduct" narrative, Phillips' perception that Sandmann "sort of stopped his exit" is simply not actionable as defamation. Summary judgment for CBS is therefore appropriate.

Respectfully submitted,

/s/ *Natalie J. Spears*
Natalie J. Spears *(pro hac vice)*
Gregory R. Naron *(pro hac vice)*
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Phone: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com

Jared A. Cox (KBA #92523)
DENTONS BINGHAM GREENEBAUM LLP
101 South Fifth Street, Suite 3500 Louisville,

10

Kentucky 40202
Phone: (502) 589-4200
jared.cox@dentons.com

Jessica Laurin Meek *(pro hac vice)*
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, Indiana 46204
Phone: (317) 635-8900
jessica.meek@dentons.com

*Counsel for Defendants CBS News Inc., ViacomCBS Inc., and CBS Interactive Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I electronically filed the foregoing via the CM/ECF system, which will send notice of filing to all parties of record.

>                     */s/ Natalie J. Spears*
>                     Natalie J. Spears